**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4720**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

  v.

HAROLD HALL, JR.

        Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., Senior District Judge. (3:14-cr-00629-JFA-1)

Argued: January 24, 2017                      Decided: June 1, 2017

Before WILKINSON, WYNN, and FLOYD, Circuit Judges.

Reversed, vacated, and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Floyd joined. Judge Wilkinson wrote a dissenting opinion.

**ARGUED**: Jeffrey Michael Brandt, ROBINSON & BRANDT, P.S.C., Covington, Kentucky, for Appellant. Benjamin Neale Garner, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF**: William N. Nettles, United States Attorney, William K. Witherspoon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

WYNN, Circuit Judge:

A jury convicted Defendant Harold Hall, Jr., of possession with intent to distribute marijuana, possession of a firearm by a convicted felon, and possession of a firearm in furtherance of a drug trafficking crime based on evidence obtained during law enforcement officers' search of a Columbia, South Carolina, home in which Defendant resided along with, he maintains, three other individuals. The search revealed approximately six kilograms of marijuana and three firearms inside a deadbolt-locked bedroom in the home.

To establish Defendant's possession of the guns and marijuana, the government relied on a constructive possession theory, under which it had to prove that Defendant "kn[e]w[] of [the contraband's] presence *and* ha[d] the power to exercise dominion and control over it." *United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985) (emphasis added). At trial, the government presented no evidence directly linking Defendant to the guns and marijuana or to the locked bedroom in which the contraband was found. The guns and marijuana did not include Defendant's fingerprints, nor was there evidence that he had ever used any of the three guns or the marijuana. Defendant did not have a key to the bedroom's lock. And the remaining items found in the locked bedroom provided no evidence that Defendant had ever been inside that room.

How then did the government establish, beyond a reasonable doubt, Defendant's constructive possession of the contraband in the locked bedroom? The government successfully sought admission of Defendant's prior convictions—one for possession of marijuana and three for possession with intent to distribute marijuana—under Federal Rule of Evidence 404(b)(1). The district court concluded that these convictions were admissible

2

to establish that Defendant (1) knew, based on his familiarity with the smell of marijuana, that the house contained marijuana; and (2) had the specific intent to distribute the marijuana.

Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Rule 404(b)'s prohibition is not based on the notion that "character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475–76 (1948) (footnote omitted).

To ensure that defendants are protected from the prejudicial effect of their prior convictions, the government must establish that evidence of a defendant's prior bad acts is admissible for a proper, non-propensity purpose, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In meeting this burden, the government must prove that the evidence is "relevant to an issue, such as an element of an offense, and [is] not . . . offered to establish the general character of the defendant." *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). "The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012). The government also must demonstrate that the evidence is "necessary in the sense that it is probative of an essential claim or an element of the offense," that the evidence is "reliable," and that "the evidence's

3

probative value [is] not . . . substantially outweighed by confusion or unfair prejudice." *Queen*, 132 F.3d at 997.

The district court in this case concluded that the government—which simply provided the district court with the name and date of the convictions, but offered no information regarding the facts and circumstances giving rise to those convictions—met its burden to establish that Defendant's prior convictions were admissible under Rule 404(b) as to Defendant's knowledge and intent. In doing so, the district court abused its discretion. In particular, because the government proffered no evidence of *any* connection between Defendant's prior possession conviction and the instant possession with intent to distribute charge, that possession conviction was not relevant to whether Defendant intended to distribute the marijuana found inside the locked bedroom. Likewise, the absence of factual similarity and temporal proximity between Defendant's prior possession with intent to distribute convictions and the conduct alleged in the present case renders those prior convictions irrelevant to establishing Defendant's intent to distribute the marijuana in the locked bedroom. And although Defendant's prior marijuana possession and distribution convictions were relevant to establishing Defendant's knowledge of the smell of marijuana, the minimal probative value of admitting those convictions for that purpose was substantially outweighed by the likelihood of unfair prejudice, particularly in light of (1) Defendant's decision not to contest his knowledge of the smell of marijuana or its presence in the house; and (2) the absence of evidence linking Defendant to the contraband in the locked bedroom.

4

The dissenting opinion would reduce the government's burden under Rule 404(b), allowing admission of evidence that a defendant committed a prior drug offense to establish the defendant's knowledge and intent to commit a later drug offense, even absent any linkage between the prior offense and the charged conduct. But it is well established that the "fact that a defendant may have been involved in drug activity in the past does not in and of itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct." *United States v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010). In accordance with that principle, we have held on numerous occasions that a district court abuses its discretion by admitting evidence of a defendant's prior drug convictions when those convictions are removed in time from the charged offense and the government fails to establish a sufficient link between those prior convictions and the events giving rise to the charge at issue. This precedent requires that we reach the same conclusion here.[1]

We turn first to the issue at hand, after which we devote a separate section to responding to our dissenting colleague's protestations.

## I.

---

[1] We acknowledge the dissenting opinion's view that we in the majority are demonstrating "the encroachment of overactive appellate judging on the roles of district courts, juries, and advocates in the conduct of a trial." *Post* at 1. But we remind our good colleague that appellate judges do not come to the court as *tabulae rasa*. *See Republican Party of Minn. v. White*, 536 U.S. 765, 777–78 (2002) (Scalia, J.). They come, for example, with varying degrees of prior experience in trial advocacy and trial judging. That diversity of prior experience is often helpful in the collective decision-making process of appellate judges.

On June 25, 2012, a confidential informant working on behalf of several law enforcement agencies completed a probable cause purchase of marijuana at a residence on Steadham Road in Columbia, South Carolina (the "residence," or the "Steadham Road residence"). The confidential informant did not purchase the marijuana from Defendant. Rather, the informant bought the marijuana from an individual referred to only as "Jeezy," who, the informant testified, was not Defendant. J.A. 394–95. Following the purchase, law enforcement officers obtained a warrant to search the residence.

On June 27, 2012, law enforcement officers went to the Steadham Road residence to execute the search warrant. Minutes before conducting the search, Officer Brien Gwyn saw two men leave the residence and drive away in a blue Ford SUV. Officer Gwyn followed the SUV and conducted a traffic stop several blocks away. Defendant and his cousin, Gerald Hall ("Gerald"), were in the SUV. When questioned, Defendant told Officer Gwyn that he lived at the Steadham Road residence by himself. Gerald was later charged with simple possession of marijuana arising from the officers' search of the SUV. Although Gerald's arrest report indicated that he had no permanent address, Gerald testified at trial that he had lived at the Steadham Road residence for several years, including at the time of these events.

While Officer Gwyn conducted the traffic stop, other law enforcement officers searched the Steadham Road residence. Immediately upon entering the residence, the officers smelled an overwhelming odor of unburnt marijuana. In conducting their search, the officers found marijuana residue on the kitchen table. Inside the kitchen, the officers

found a utility bill for the residence in Defendant's name, as well as a piece of mail addressed to Defendant. In the living room, the officers found several computers that Defendant used for his work as a truck dispatcher, one of which had a digital scale on top. And inside a closet in the back-left bedroom, officers found a shirt containing Defendant's photo identification and $1,000 in cash.

Defendant's uncle, Russell Sulton, testified that he lived in one of the remaining three bedrooms, and Sulton's brother, Robert Hendrix, testified that he lived in another of the bedrooms. Like Defendant and Gerald, neither Sulton nor Hendrix owned the house. The residence's final bedroom, at the back-right side of the house, was secured with a deadbolt lock. After forcing entry into that bedroom, officers found approximately six kilograms of marijuana, packaging material, and three guns, at least one of which was stolen. Defendant's fingerprints were not on any of this contraband. The government also did not introduce evidence that Defendant had previously used or been linked to the guns, or that Defendant had used or sold the marijuana. And none of the other evidence found inside the locked bedroom pointed to Defendant as the bedroom's occupant or as someone who previously had accessed the room.

Upon learning that officers had entered the Steadham Road residence and discovered the marijuana and guns, Officer Gwyn took Defendant and Gerald into custody and drove them to the residence in his patrol car. Officers later arrested Defendant in connection with the contraband found inside the deadbolt-locked bedroom.

B.

7

A federal grand jury indicted Defendant for (1) knowingly possessing a firearm after being convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1); (2) knowingly or intentionally possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); and (3) knowingly using and carrying firearms during and in relation to, and possessing firearms in furtherance of, a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Because Defendant did not actually possess the guns or marijuana, the government pursued a constructive possession theory, under which the jury could find that Defendant possessed the contraband in the deadbolt-locked bedroom only if it concluded beyond a reasonable doubt that Defendant "[1] kn[e]w[] of [the contraband's] presence and [2] ha[d] the power to exercise dominion and control over it." *Schocket*, 753 F.2d at 340.

Prior to Defendant's jury trial, the government sought leave to introduce, as part of its case-in-chief, evidence of four of Defendant's prior convictions: a 2006 conviction for possession of marijuana (the "prior possession conviction"); a 2004 conviction for possession with intent to distribute marijuana; and two 2007 convictions for possession with intent to distribute marijuana (collectively, the "prior possession with intent to distribute convictions"). The government provided the court with the date of each conviction and the statutes Defendant had been convicted of violating, but it did not offer the court any information regarding the circumstances giving rise to the convictions. Emphasizing only the "overwhelming" odor of marijuana at the Steadham Road residence at the time of the search, the government argued that Defendant's prior marijuana convictions were relevant and admissible under Rule 404(b) to establish his knowledge

8

absent mistake that there was marijuana inside the residence, where Defendant had been just minutes before officers executed the search warrant. J.A. 22–23.

Defendant objected to admission of the prior convictions to establish knowledge of the contraband, arguing that the convictions were "not 404(b) material" because Defendant was "not charged with smelling marijuana," and "[h]e certainly didn't smell the guns." J.A. 24–25. Defendant further emphasized that the prior convictions had no relevance to the only contested issue in the case—whether Defendant had the power to exercise dominion and control over the contraband in the locked bedroom. Initially, the district court expressed reluctance to admit the prior convictions, questioning the government's theory that the smell of marijuana inside the Steadham Road residence, by itself, rendered Defendant's prior drug convictions admissible under Rule 404(b) to establish Defendant's knowledge. But after the government provided the district court with this Court's unpublished decision in *United States v. White*, 519 F. App'x 797 (4th Cir. 2013), the district court concluded that *White* compelled admission of Defendant's prior convictions. Although the district court admitted the prior convictions, the court reaffirmed its belief that the framers of Rule 404(b) did not intend to render such convictions admissible. J.A. 62. ("I don't like [*White*]. I'm not sure Rule 404(b) was drafted to be that broadly construed, but that is the way it has been construed, and I am bound by my oath to follow the Fourth Circuit law.").

Notwithstanding that the government argued only that the prior convictions were admissible to establish Defendant's *knowledge* of the marijuana, the district court admitted the prior convictions to establish *both* Defendant's knowledge of and intent to distribute

9

the marijuana. To that end, at the conclusion of its case-in-chief, the government read Defendant's prior convictions into evidence before the jury and stated that the convictions were "relevant to [Defendant's] knowledge and intent regarding the crimes which we're here for today." J.A. 64. The district court then provided a limiting instruction, informing the jury that Defendant's prior convictions were "being offered only on the issue of knowledge and intent" and could not "be accepted . . . to show that someone is a bad person . . . [or] had a propensity to commit an offense." J.A. 64–65. The court's instruction did not limit the jury's use of Defendant's prior convictions to the possession with intent to distribute charge. And the absence of other evidence establishing that Defendant had knowledge of the guns inside the locked bedroom indicates that the government—and the jury—relied upon Defendant's prior marijuana convictions to prove that Defendant also knew about the guns.

Yet in presenting his defense at trial, Defendant did not contest his knowledge of marijuana generally or his knowledge that the Steadham Road residence contained marijuana or guns. Nor did Defendant contest that the marijuana in the locked bedroom was intended for distribution. Rather, Defendant argued that *he* did not possess the marijuana or guns in the locked bedroom because he lacked the power to exercise dominion and control over them. In particular, the defense sought to establish that Gerald, not Defendant, possessed the contraband. In support of this defense, Defendant called Gerald to the witness stand and elicited testimony that Gerald, not Defendant, resided in and had sole access to the deadbolt-locked bedroom; that Defendant did not live in the residence but stopped by occasionally to dispatch trucks for his work; that Gerald alone possessed

10

the marijuana and guns in the locked bedroom; and that Defendant had no interest in the marijuana or guns. Defendant also elicited testimony from Sulton and Hendrix, who corroborated Gerald's testimony that Defendant did not live in the residence and that Gerald occupied the locked bedroom.[2]

Notwithstanding that the district court admitted Defendant's prior marijuana convictions solely for the purposes of establishing Defendant's knowledge and intent to distribute, during closing arguments the government used Defendant's prior convictions for a third purpose: to discredit Gerald's testimony. Specifically, the government appealed to Defendant's prior convictions to suggest that Gerald—who, unlike Defendant, had no prior felony convictions—lied about solely possessing the guns and drugs because he was likely, according to the government, to receive probation if he were convicted for the offenses related to the contraband, whereas Defendant was at risk of receiving a substantial sentence due to his prior felony convictions. J.A. 143–44 ("[Defendant] knew that he would have been facing substantial[ly] more time in jail [than Gerald] who has no prior

---

[2] The dissenting opinion characterizes this defense as a "cock-and-bull" story, citing evidence presented by the government that tended to establish that Defendant did live at the Steadham Road residence. *Post* at 5. But, as discussed in greater detail below, that Defendant lived at the residence does not prove that he possessed the contraband in the back-right bedroom. *Infra* Part IV.B, VII.A; *United States v. Blue*, 808 F.3d 226, 233–34 (4th Cir. 2015). Nor does the dissenting opinion's characterization of the government's case as open and shut—a characterization even the government seems not to have agreed with during trial, *see infra* Part VIII.B—affect our conclusion that the district court committed *legal error* in admitting evidence of Defendant's prior convictions and, for that reason, abused its discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

convictions. Gerald probably would have gotten probation. So Gerald became the fall guy for the family.").

The jury convicted Defendant of all three indicted offenses, and the district court sentenced Defendant to 360 months in prison. Defendant timely appealed. On appeal, Defendant argues that the district court (1) reversibly erred in admitting evidence of Defendant's four prior marijuana convictions; (2) improperly sentenced Defendant as a career offender; (3) unconstitutionally increased Defendant's maximum sentence based on his prior convictions, which were not proven to the jury beyond a reasonable doubt; and (4) erroneously imposed a substantively unreasonable sentence.

For the reasons that follow, we conclude that the district court abused its discretion in allowing the government to introduce evidence of Defendant's prior possession and possession with intent to distribute convictions under Federal Rule of Evidence 404(b) and that this error irreparably tainted each of Defendant's three convictions. Because this error requires that Defendant's convictions be vacated, we decline to rule on the remaining three issues raised on appeal.

II.

We generally review a district court's decision to admit a defendant's prior convictions under Rule 404(b) for abuse of discretion. *See McBride*, 676 F.3d at 395. "Where a party, however, fails to object to the admission of evidence . . . we review the admission for plain error." *United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996) (applying plain error review to an unpreserved challenge to admission of prior bad act evidence under Rule 404(b)). The government argues that Defendant failed to properly preserve his

12

argument against admission of the prior convictions because his objections before the trial court lacked sufficient specificity. Accordingly, the government maintains that we must apply "the more rigorous plain error standard." Appellee's Br. at 16. This argument borders on frivolous.[3]

"To preserve a claim of error under Federal Rule of Criminal Procedure 51(b), a party must only 'inform[] the court . . . of the action the party wishes the court to take.'" *United States v. Woods*, 710 F.3d 195, 200 n.2 (4th Cir. 2013) (alterations in original). In the case at bar, Defendant objected to the admission of his prior marijuana convictions as "not 404(b) material" immediately after the government notified Defendant and the district court that it intended to introduce those prior convictions. J.A. 25. Defendant's counsel explained that the prior convictions were of minimal relevance to establishing Defendant's knowledge of the marijuana because "he's not charged with smelling marijuana. He's charged with the marijuana that was in that back right room. . . . [and] whether or not he knew it was in there, whether he had exercised dominion or control over it." J.A. 24. Defendant's counsel further argued that, based on the government's theory, the prior convictions could not be relevant to the firearm charges because "[Defendant] certainly didn't smell the guns." J.A. 24. These arguments not only "inform[ed] the court" that Defendant did not believe admission of the prior convictions was proper to establish

---

[3] Meritless preservation and waiver arguments waste the Court's time and unfairly prejudice opposing parties, who must devote limited briefing space to refuting unsupported arguments. *See Cornes v. Munoz*, 724 F.2d 61, 63 n.3 (7th Cir. 1983); *see also Smith v. Robbins*, 528 U.S. 259, 281 (2000) (explaining that counsel has an "ethical duty as an officer of the court . . . not to present frivolous arguments").

13

knowledge under Rule 404(b), but they also "inform[ed] the court" of Defendant's position that the convictions were not relevant to—much less probative of—the only contested issue in the case: whether Defendant had the power to exercise dominion and control over the contraband in the locked bedroom. *See* Fed. R. Crim. P. 51(b). The district court recognized as much, stating that it "would overrule [Defendant's] *objection* and allow the 404(b) evidence." J.A. 62 (emphasis added).

Defendant's arguments, therefore, were more than sufficient to preserve his objection to the district court's admission of his prior convictions under Rule 404(b). But even if Defendant had not cited Rule 404(b) by name—which he did—his arguments would have been adequate to preserve his objection because they were "sufficiently specific to bring into focus the precise nature of the alleged error." *United States v. Doswell*, 670 F.3d 526, 530 (4th Cir. 2012) (internal quotation marks omitted). Accordingly, we now review for abuse of discretion the district court's admission of Defendant's prior marijuana convictions under Rule 404(b) to establish knowledge and intent.

III.

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The government, therefore, "may not introduce evidence of extrinsic offenses to demonstrate the defendant's propensity to commit unlawful acts or to prove that the defendant committed the crime with which he is presently charged." *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995) (internal quotation marks omitted).

14

Rule 404(b)'s "purposeful exclusion of such prior 'bad act' evidence is not grounded in its irrelevance." *McBride*, 676 F.3d at 395. "Instead, the general inadmissibility of such evidence is based on the danger that this type of evidence will overly influence the finders of fact and thereby persuade them 'to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.'" *Id.* (quoting *Michelson*, 335 U.S. at 475–76). Additionally, Rule 404(b)'s general exclusion of evidence of a defendant's prior bad acts "reflects the revered and longstanding policy that, under our system of justice, an accused is tried for *what* he did, not *who* he is." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014). To that end, Rule 404(b) "protects against juries trying defendants for *prior acts* rather than *charged acts*." *Queen*, 132 F.3d at 996 (emphasis added).

Although "other acts" evidence is not admissible to prove criminal propensity, such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). As the plain language of the rule suggests, this list of proper purposes is not exhaustive. *Queen*, 132 F.3d at 994–95. Yet to constitute a proper purpose, "there must be some articulable inference for the jury to draw from the previous offense other than that the defendant had [a] bad character and therefore more probably had the intent to commit the crime he is now charged with." *United States v. Lynn*, 856 F.2d 430, 436 (1st Cir. 1988).

The government bears the burden of establishing that evidence of a defendant's prior bad acts is admissible for a proper purpose. *United States v. Youts*, 229 F.3d 1312,

15

1317 (10th Cir. 2000); *United States v. Arambula-Ruiz*, 987 F.2d 599, 602–03 (9th Cir. 1993). To satisfy this burden, the government must identify each proper purpose for which it will use the other acts evidence and explain how that evidence "fits into a chain of inferences—a chain that connects the evidence to [each] proper purpose, no link of which is a forbidden propensity inference." *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013). Even if the government provides a proper purpose for admitting prior bad act evidence, such evidence is still inadmissible if its likely prejudicial effect substantially outweighs its probative value. *McBride*, 676 F.3d at 396.

In *Queen*, we set forth a four-step test for determining when evidence of prior bad acts is admissible under Rule 404(b). 132 F.3d at 997. First, "[t]he evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant." *Id.* Second, "[t]he act must be necessary in the sense that it is probative of an essential claim or an element of the offense." *Id.* Third, "[t]he evidence must be reliable." [4] *Id.* And fourth, "the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." *Id.*

Applying this test, we first consider whether the district court abused its discretion in holding that Defendant's prior conviction for simple possession of marijuana was admissible under Rule 404(b). Then, we address whether the district court abused its

---

[4] Defendant does not challenge the reliability of his prior convictions.

discretion in admitting Defendant's three prior convictions for possession with intent to distribute marijuana.

## IV.

## A.

We first address whether Defendant's prior *possession* conviction was admissible to prove Defendant's *intent to distribute* the marijuana found inside the locked bedroom of the Steadham Road residence. The first step of the *Queen* test provides that other acts "evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant." *Id.* "For evidence to be relevant, it must be 'sufficiently related to the charged offense.'" *McBride*, 676 F.3d at 397 (quoting *United States v. Rawle*, 845 F.2d 1244, 1247 n.3 (4th Cir. 1988)). "The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." *Id.*; *see also Queen*, 132 F.3d at 997 ("[T]he more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes."). In the context of prior drug offenses, in particular, we have held that the "fact that a defendant may have been involved in drug activity in the past *does not in and of itself* provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct." *Johnson*, 617 F.3d at 297 (emphasis added).

The government makes no effort to argue that the district court properly admitted Defendant's prior marijuana *possession* conviction as relevant to his *intent to distribute* marijuana. For good reason. "Possession and distribution are distinct acts—far more

17

people use drugs than sell them—and these acts have different purposes and risks." *Davis*, 726 F.3d at 444; *see also United States v. Ono*, 918 F.2d 1462, 1465 (9th Cir. 1990) ("Acts related to the personal use of a controlled substance are of a wholly different order than acts involving the distribution of a controlled substance."). Fundamentally, "[o]ne activity involves the personal abuse of [illegal drugs]," whereas the other involves "the implementation of a commercial activity for profit." *Ono*, 918 F.2d at 1465. "[I]f the act of possessing or using marijuana is to be admissible to prove intent to transport and sell marijuana, . . . then there is no reason why participation in any drug-related crime could not be used to prove intent to engage in any other drug-related crime, or why any robbery could not be used to prove the requisite intent with respect to any other robbery. A rule allowing such evidence would eviscerate almost entirely the character evidence rule." David P. Leonard, *The New Wigmore, A Treatise on Evidence: Evidence of Other Misconduct & Similar Events* § 7.5.2.

Moreover, the mens rea requirements for possession and distribution offenses are fundamentally different. For example, the Georgia possession statute under which Defendant was convicted prohibits "any person to purchase, possess, or have under his or her control any controlled substance"—regardless of what the person intends to do with the controlled substance. Ga. Code Ann. § 16-13-30(a). By contrast, to convict Defendant of possession with intent to distribute marijuana, the government had to prove Defendant's specific intent to distribute the marijuana found inside the locked bedroom. *See* 21 U.S.C. § 841(a)(1), (b)(1)(D). Because Defendant's prior possession conviction did not require a finding of specific intent, the only relevance that conviction could have to his intent to

18

distribute marijuana on a later, unrelated occasion is that it tends to suggest that Defendant is, in general, more likely to distribute drugs because he was involved with drugs in the past. This is precisely the propensity inference Rule 404(b) prohibits. *See Johnson*, 617 F.3d at 297.

For this reason, several of our sister circuits have held that evidence of a defendant's prior conviction for possession of drugs for personal use is inadmissible under Rule 404(b) to prove a defendant's intent to distribute a controlled substance on a later, unrelated occasion. *See, e.g.*, *Davis*, 726 F.3d at 445 ("[A] possession conviction is inadmissible to prove intent to distribute."); *United States v. Haywood*, 280 F.3d 715, 721 (6th Cir. 2002) (finding no "compelling rationale" for the idea that "a defendant's possession of drugs for personal use is relevant to prove his intent to distribute drugs found in his possession on another occasion"); *Ono*, 918 F.2d at 1465 (discussing the fundamental differences between possession and distribution crimes); *United States v. Monzon*, 869 F.2d 338, 344 (7th Cir. 1989) (finding that a defendant's possession of marijuana was not relevant to his intent to distribute). *But see, e.g.*, *United States v. Butler*, 102 F.3d 1191, 1196 (11th Cir. 1997) ("[T]he logical extension of our current jurisprudence is to admit evidence of prior personal drug use to prove intent in a subsequent prosecution for distribution of narcotics.").

We agree, and therefore hold, that a defendant's prior conviction for possession of a drug is not relevant to establishing the defendant's intent to distribute a drug at a later time, absent some additional connection between the prior offense and the charged offense. Because the government proffered no evidence of *any* connection between Defendant's

19

prior possession conviction and the instant possession with intent to distribute charge, we find that Defendant's prior possession conviction is not relevant to whether Defendant intended to distribute the marijuana found inside the locked bedroom of the Steadham Road residence.

B.

Next, we consider whether the district court abused its discretion in permitting the government to introduce Defendant's prior possession conviction to establish Defendant's knowledge of the marijuana inside the locked bedroom. Again, we first must determine whether Defendant's prior possession conviction was relevant, *i.e.*, "related in time, manner, place, or pattern of conduct," to his knowledge that the marijuana was inside the locked bedroom. *Johnson*, 617 F.3d at 297.

A defendant's prior conviction for possession of a particular drug will not always be relevant to establishing the defendant's knowledge of "the same drug when prepared for distribution." *Davis*, 726 F.3d at 443. For example, distribution quantities of a drug are often packaged differently than quantities possessed for personal use, rendering a defendant's knowledge of the packaging of a personal use amount of a drug irrelevant to his knowledge of how a distribution amount of the same drug might be packaged. *Id.* Likewise, a single drug may be sold in multiple forms, rendering a defendant's past possession of one form of the drug irrelevant to his knowledge of a different form of the same drug. *Id.*

Nonetheless, a prior possession conviction may be relevant to establishing a defendant's knowledge of the same type of drug for purposes of a later offense if the

20

particular characteristic of the drug used to establish knowledge does not materially vary based on quantity, form, or packaging, for example. Of particular relevance here, an individual's prior experience with the smell of unburnt marijuana, as evidenced by a prior marijuana-related conviction, is relevant to establishing that the defendant knew, based on *smell*, of the presence of unburnt marijuana on a later occasion. *See United States v. Jara*, 474 F.3d 1018, 1022–23 (8th Cir. 2007) (holding that defendant's prior experience with marijuana was admissible to establish that he knew, based on smell, that the car he was driving contained marijuana); *United States v. Espinoza-Durazo*, 253 F. App'x 677, 680 (9th Cir. 2007) ("[Defendant]'s prior experience with marijuana makes it unlikely that she could have sat in the car with 147 pounds of it without recognizing the smell, and therefore the prior act tends to prove knowledge."). Accordingly, we conclude that Defendant's prior possession conviction was relevant to his knowledge that the Steadham Road residence contained marijuana.

Although we conclude that Defendant's prior possession conviction was relevant to establishing his knowledge that marijuana was inside the residence, the prejudicial effect of admitting that prior conviction for this purpose far outweighed the evidence's probative value, rendering the conviction inadmissible under *Queen*'s fourth prong. That vital prong requires the trial judge to "balance the relevance of the proposed use of the evidence to the case—and the evidence's relevance to that proof—against the high risk that the evidence will also tend to establish bad character and propensity to commit the charged crime." *United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012). Absent such balancing of the prior bad act evidence's probative value against its prejudicial effect, "the list of exceptions

21

in Rule 404(b), if applied mechanically, would overwhelm the central principle. Almost *any* bad act evidence simultaneously condemns by besmirching character and by showing one or more of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, not to mention the other purposes of which this list is meant to be illustrative." *Id.* at 696–97 (internal quotation marks omitted).

Defendant's prior possession conviction had minimal probative value for several reasons. First, "the probative value of prior act evidence is diminished where the defendant *does not contest* the fact for which supporting evidence has been offered." *Caldwell*, 760 F.3d at 283 (emphasis added); *Miller*, 673 F.3d at 697 (finding that, although "intent is at least formally relevant to all specific intent crimes" and, accordingly, at issue in every case in which the defendant pleads not guilty, "intent becomes more relevant, and evidence tending to prove intent becomes more probative, when the defense *actually works to deny intent*, joining the issue by contesting it" (emphasis added)). Indeed, "[t]he prejudicial effect of extrinsic evidence *substantially outweighs* its probative value when the relevant exception [under which the government seeks admission of an extrinsic offense] is uncontested, because the incremental probative value of the extrinsic offense is inconsequential when compared to its prejudice." *United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013) (emphasis added). Here, Defendant did not contest that he knew, based on his knowledge of the odor of marijuana or otherwise, that there was marijuana inside the Steadham Road residence. Accordingly, evidence of Defendant's knowledge of the odor of marijuana, as established by his prior possession conviction, was of "minimal" probative value. *Caldwell*, 760 F.3d at 283–84.

22

Second, even if Defendant had contested his knowledge of the odor of unburnt marijuana or of the presence of marijuana inside the residence, Defendant's knowledge of the odor of marijuana was minimally probative of the crucial issue regarding his knowledge: whether Defendant knew that there was marijuana *inside the locked bedroom*. Under the government's constructive possession theory—requiring proof both of Defendant's knowledge of the contraband and his ability to exercise dominion and control over it—such localized knowledge would have been particularly relevant. But the officers' undisputed testimony at trial was that they smelled a strong odor of unburnt marijuana upon *entering* the Steadham Road residence and that this odor pervaded the house. The government did not offer any evidence that the odor of marijuana specifically emanated from the locked bedroom. To the contrary, the government argued that Defendant's prior marijuana conviction was relevant to establishing that he knew "there [wa]s marijuana *in his house*." J.A. 23 (emphasis added). That the officers found marijuana residue on the dining room table further reinforced that the odor of marijuana was not localized to the locked bedroom. Accordingly, Defendant's knowledge that the Steadham Road residence smelled of marijuana did not speak to whether he knew that the locked bedroom, in particular, contained marijuana—much less guns—further diminishing the probative value of Defendant's prior possession conviction to prove knowledge within the government's constructive possession theory.

On the other side of the scale, admission of Defendant's prior possession conviction was highly prejudicial. As the Advisory Committee's note to Rule 404 warns:

23

> Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Fed. R. Evid. 404(a) advisory committee's note to 1972 proposed rule. And "[t]he prejudicial impact is only heightened when character evidence is admitted in the form of a prior criminal conviction," *Caldwell*, 760 F.3d at 284, as was the case here.

Additionally, the dearth of evidence supporting the only contested issue in Defendant's case—whether Defendant had the power to exercise dominion and control over the marijuana and guns in the locked bedroom—enhanced the prejudicial effect of admitting Defendant's prior possession conviction. When other crimes evidence is of "marginal probative value" and other evidence supporting a drug trafficking defendant's guilt is "scarc[e] and equivocal," there is "an unacceptable risk that the jury w[ill] assume that [the defendant] ha[s] a propensity for [drug] trafficking and convict on that basis alone." *United States v. Aguilar-Aranceta*, 58 F.3d 796, 802 (1st Cir. 1995); *see also United States v. Sumner*, 119 F.3d 658, 661 (8th Cir. 1997) (holding that the district court abused its discretion in admitting evidence of the defendant's other crimes because the "overall weakness of the government's case" increased the prejudice associated with introduction of such evidence); *United States v. Rhodes*, 886 F.2d 375, 380 (D.C. Cir. 1989) (holding that the district court plainly erred in admitting prior bad acts evidence because the "weakness of the government's other evidence" enhanced the other acts' prejudicial effect).

Here, the government did not introduce any evidence establishing that Defendant could exercise dominion and control over the contraband in the locked bedroom—the only disputed issue at trial. In particular, the government did not introduce evidence that Defendant had a key to the deadbolt lock on the bedroom door or had previously accessed the bedroom through other means on any occasion. It did not introduce evidence that Defendant's fingerprints were on any surface in the locked bedroom, let alone on the marijuana or guns. And it did not introduce evidence that Defendant owned or had used any of the other objects found inside the locked bedroom.

In possession cases involving similar facts, this Court and other circuits have found that the government failed to introduce sufficient evidence to support a finding that a defendant constructively possessed contraband. *See, e.g.*, *United States v. Blue*, 808 F.3d 226, 233–34 (4th Cir. 2015) (finding that the government failed to provide sufficient evidence to prove that the defendant exercised dominion and control over heroin in a footstool inside an apartment when the government's evidence established only that the defendant had a key to the apartment and spent five minutes inside it); *United States v. Brown*, 3 F.3d 673, 680–81 (3d Cir. 1993) (holding that the government failed to produce sufficient evidence to establish that the defendant constructively possessed drugs found in a house in which she lived, at least some of the time, when the defendant's shorts and switchblade were found in a room in which no drugs were found, her fingerprints were not found on the drugs, and she did not own the house); *United States v. Zeigler*, 994 F.2d 845, 847–48 (D.C. Cir. 1993) (holding that the government failed to introduce sufficient evidence to establish the defendant's constructive possession of contraband in the locked

25

laundry room of her boyfriend's apartment, where the defendant had been staying "off and on for two or three months," when there was no evidence she had ever been inside the laundry room or knew the combination to the lock). Due to the lack of evidence connecting Defendant to the drugs inside the locked bedroom and the minimal probative value of the prior possession conviction to establish Defendant's knowledge that the bedroom contained marijuana, there is a strong and unacceptable likelihood that the jury concluded Defendant "had a propensity for [drug] trafficking and convict[ed] on that basis alone"— the precise result Rule 404(b) forbids. *See Aguilar-Aranceta*, 58 F.3d at 802.

Given that Defendant's prior conviction for possession of marijuana was highly prejudicial and minimally probative of Defendant's knowledge of the marijuana inside the locked bedroom, we conclude that the district court abused its discretion in finding that the probative value of admitting that conviction outweighed its prejudicial effect. *Lynn*, 856 F.2d at 436 n.13 ("[A]dmission [of a prior conviction] is not warranted when, in the context of the government's case and appellant's defense the relevance is minimal and the tendency to draw the propensity inference great.").

\* \* \* \* \*

In sum, Defendant's prior possession conviction is not relevant to Defendant's intent to distribute the marijuana found inside the Steadham Road residence. And the prejudice associated with admission of Defendant's prior possession conviction far outweighs the conviction's minimal probative value in establishing Defendant's knowledge of the smell of marijuana or the presence of marijuana inside the locked bedroom—as well as its even more attenuated probative value in proving Defendant's

26

knowledge of the presence of guns inside the same bedroom.  Accordingly, we conclude that the district court abused its discretion by allowing the government to introduce evidence of Defendant's prior possession conviction under Rule 404(b).

V.

Having concluded that the district court abused its discretion in admitting Defendant's possession conviction, we now must determine whether the district court properly admitted Defendant's three possession with intent to distribute convictions. Again, we apply the *Queen* framework to determine whether those convictions are admissible under Rule 404(b) to establish either Defendant's knowledge or his intent to distribute the marijuana found inside the locked bedroom of the Steadham Road residence.

A.

First, we must determine whether Defendant's prior possession with intent to distribute convictions were admissible to establish his intent to distribute the marijuana in the locked bedroom. Again, as *Queen* instructs, we begin by assessing whether those convictions are relevant to Defendant's intent to distribute the marijuana. 132 F.3d at 997. In assessing relevance, we consider how closely "the prior act is related to the charged conduct in time, pattern, or state of mind." *McBride*, 676 F.3d at 397.

The government did not put forward any evidence before or during trial that Defendant's prior intent to distribute convictions were related in manner or arose from the same "pattern of conduct" as the instant offense. *Johnson*, 617 F.3d at 297. Although three of the prior offenses involved the same crime—possession with intent to distribute—and the same drug—marijuana—their similarities end there. None of the prior convictions

27

involved the Steadham Road residence. Nor did any of the prior convictions involve storing marijuana in a deadbolt-locked bedroom. Nor did Defendant allegedly purchase the marijuana in the locked bedroom from the same supplier from whom he purchased the marijuana at issue in any of the three prior convictions. At bottom, unlike drug cases in which we have found prior drug offenses admissible under Rule 404(b), the government failed to establish any "linkage between the prior-act evidence and the drug crimes charged in the indictment." *McBride*, 676 F.3d at 397.

On the contrary, there are material differences between the circumstances giving rise to Defendant's previous possession with intent to distribute convictions and the conduct at issue here, particularly regarding the only contested issue in this case— Defendant's power to exercise dominion and control over the marijuana in the locked bedroom. In one case, for example, law enforcement officers found marijuana in Defendant's pocket while executing a warrant search of his residence and, in the course of the same search, discovered distribution quantities of marijuana in his bathtub and dresser drawer. In another case, Defendant did not contest his ownership of the marijuana giving rise to the offense. And in the last case, officers found marijuana in a plastic bag that they observed Defendant throw out of the window of his car. That, as these facts establish, Defendant's prior drug offenses are not "related" in pattern or manner of conduct to the instant possession with intent to distribute charge weighs against concluding that those

28

prior convictions are "sufficiently related to the charged offense to render [them] adequately relevant to prove intent or knowledge."[5] *Johnson*, 617 F.3d at 298.

These material differences between the prior possession with intent to distribute convictions and the charged offense set this case apart from cases in which we have concluded that a defendant's prior convictions for possession with intent to distribute are admissible under Rule 404(b) to establish intent to distribute on a later occasion. For instance, in *United States v. Rawle*, 845 F.2d 1244 (4th Cir. 1988), we upheld the district court's admission of testimony regarding the defendant's prior bad acts as a transporter of controlled substances because of striking similarities between those prior acts and the events giving rise to the allegations at trial. Namely, the other acts testimony revealed that the defendant "dr[o]ve tractor[ trailer]s laden with marijuana" and used "false bills of lading" as part of an interstate drug trafficking conspiracy that culminated in his prior convictions. 845 F.2d at 1247–48. Noting that the facts underlying the charged offense involved the defendant allegedly cooperating with family members to transport marijuana across state lines using tractor trailers and false bills of lading, we concluded that "there was sufficient similarity between these prior bad acts and the alleged acts of the defendant in the case at bar" to render the prior acts relevant to proving the charged offense. *Id.* at 1248. Likewise, in *United States v. Brewer*, 1 F.3d 1430 (4th Cir. 1993), we held that the

---

[5] The facts surrounding Defendant's prior convictions are recounted in the presentence report prepared for and introduced during Defendant's sentencing hearing. The government failed to provide the facts surrounding Defendant's prior convictions when it sought admission of those convictions under Rule 404(b).

district court properly admitted testimony regarding the defendant's involvement in a series of drug transactions in Washington, D.C., to establish the defendant's intent to distribute drugs in Virginia. *Id.* at 1436. In reaching this conclusion, we emphasized that the Washington, D.C., drug sales involved the same co-conspirators and occurred at the same time as the conduct at issue, creating a link sufficient to render the prior acts relevant to proving the intent element of the charged offense. *Id.*

The significant passage of time between Defendant's three prior possession with intent to distribute convictions and the charged offense further undermines any relevance Defendant's prior convictions may have. The most recent of those three convictions occurred five years before the events giving rise to the instant case. When, as here, the government fails to establish any connection or similarity between a prior drug conviction and a charged drug offense, we have held that a district court abused its discretion in admitting evidence regarding the defendant's participation in drug-related activities as little as one-and-a-half years prior to the events giving rise to the charge at issue. *McBride*, 676 F.3d at 395, 397 (stating that, for purposes of Rule 404(b), one-and-a-half years constitutes a "significant passage of time" between an unrelated prior offense and a charged offense); *see also Johnson*, 617 F.3d at 298 (characterizing an unrelated prior offense occurring nearly five years before the offense at issue as "remote in time" and holding that the district court abused its discretion in admitting evidence of that prior offense).

The lack of factual similarity and temporal proximity between Defendant's prior possession with intent to distribute convictions and the conduct alleged in the present case renders the prior convictions irrelevant and, therefore, inadmissible under the first prong

of *Queen*. This conclusion is consistent with several of our previous decisions holding that a district court abused its discretion in concluding that a prior offense was relevant and admissible under Rule 404(b). In *United States v. Johnson*, 617 F.3d 286 (4th Cir. 2010), for example, we concluded that the district court abused its discretion in holding that the defendant's alleged sale of drugs in 1998 was relevant to his intent to conspire to sell drugs in 2003. 617 F.3d at 298. In reaching this conclusion, we emphasized the lack of temporal proximity between the alleged prior bad act and the conduct at issue, as well as the absence of a "nexus" between the two offenses—such as overlapping co-conspirators, parallels in the manner in which the sales were effected, or similarities in how the defendant acquired the drugs that he was alleged to have sold. *Id.* at 297–98. Because the prior bad acts were not "sufficiently related to the charged offense" to be relevant, we held that the district court had "administered impermissibly [Rule 404(b)] 'to convict a defendant on the basis of bad character, or to convict him for prior acts, or to try him by ambush.'" *Id.* (quoting *Queen*, 132 F.3d at 997).

Similarly, in *United States v. McBride*, 676 F.3d 385 (4th Cir. 2012), we held that the district court abused its discretion by admitting testimony regarding a defendant's prior involvement with crack distribution to establish his intent to distribute cocaine approximately one-and-a-half years later. 676 F.3d at 397. In reaching this conclusion, we emphasized that the defendant's alleged prior distribution activity occurred at a different time and in a different location, and "did not arise out of the same series of transactions as the charged offense." *Id.* at 396–97. Due to the lack of "linkage" between the prior bad act and the charged offense, we concluded that the "evidence [wa]s relevant

31

primarily to establish [the defendant]'s character as a 'drug dealer'"—"the very type of evidence that the limitation imposed by Rule 404(b) was designed to exclude." *Id.* at 398.

And in *United States v. Hernandez*, 975 F.2d 1035 (4th Cir. 1992), we held that a district court abused its discretion by admitting testimony regarding the defendant's alleged participation in a crack distribution conspiracy in New York to establish her intent to conspire to distribute crack in Washington, D.C., at a later time and with different co-conspirators. 975 F.2d at 1039–40. We explained that the defendant's alleged involvement in the prior crack conspiracy was irrelevant because, due to the lack of factual similarity between that prior involvement and the charged offense, defendant's participation in a previous, unrelated conspiracy "did not establish anything about her conduct or mental state *during the course of the conspiracy alleged in the indictment*." *Id.* at 1039 (emphasis added). "The testimony did not show that [the defendant] intended to engage in crack distribution in Washington or that she intended to continue to deal in crack after leaving New York. Nor did it show that she intended to engage in crack distribution with [a different co-conspirator], or even that she intended to engage in future crack dealing at all," we explained. *Id.*

As in *Johnson*, *McBride*, and *Hernandez*, the government in this case failed to establish any "linkage" between Defendant's prior possession with intent to distribute convictions and the present offense. The conduct giving rise to Defendant's prior convictions occurred more than five years before and in different locations from the present offense. And the government failed to provide any evidence suggesting—much less demonstrating—a substantive relationship between the circumstances surrounding the

32

prior convictions and the charged offense, such as similar methods of storing, packaging, or distributing the marijuana; parallels in the manner in which Defendant acquired the marijuana; or identical customers or co-conspirators involved in distributing the marijuana. Rather, the government introduced the fact of Defendant's prior possession with intent to distribute convictions without providing *any* evidence linking the prior convictions to the charged offense. The government did so notwithstanding that it bears the burden of establishing the admissibility of Rule 404(b) evidence, *see supra* Part III, and that the fact of a defendant's past involvement in drug activity "*does not in and of itself* provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct." *Johnson*, 617 F.3d at 297 (emphasis added).

Given the government's failure to provide the district court with *any* evidence linking the circumstances giving rise to Defendant's prior convictions to the conduct at issue in the charged offense, the district court could not have assessed or determined—as *Johnson*, *McBride*, and *Hernandez* require—whether there was a sufficient "linkage" or "nexus" between the prior offenses and the charged conduct to render the prior convictions relevant and warrant their admission under Rule 404(b) to establish Defendant's intent. The district court's failure to apply the proper legal standard for determining whether a prior bad act is admissible under Rule 404(b) is, by definition, an abuse of discretion. *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 200 (4th Cir. 2000) (holding that the district court's failure to apply the appropriate legal standard amounted to an abuse of discretion).

33

We therefore conclude that Defendant's prior possession with intent to distribute convictions were relevant to Defendant's intent to distribute the marijuana inside the Steadham Road residence only if we credit the idea that Defendant's prior involvement with marijuana renders "[t]he charged acts . . . more plausible." *Hernandez*, 975 F.2d at 1040. "But this, once again, is precisely the criminal propensity inference Rule 404(b) is designed to forbid." *Id.* Accordingly, we hold that these prior convictions were not relevant to proving Defendant's intent to distribute and, thus, fail on the first *Queen* prong.

B.

Finally, we consider whether the trial court abused its discretion in finding that Defendant's prior possession with intent to distribute convictions were admissible under Rule 404(b) to establish his knowledge of the marijuana inside the locked bedroom at the Steadham Road residence.

Under *Queen*, we first determine whether Defendant's prior possession with intent to distribute convictions were relevant to his knowledge of the marijuana inside the locked bedroom. 132 F.3d at 997. As was the case with Defendant's prior possession conviction, we conclude that these prior convictions are relevant to his knowledge that the Steadham Road residence contained marijuana. *See supra* Part IV.B. In particular, Defendant's past experience with distribution amounts of marijuana makes it more likely that Defendant knew, based on the pervasive smell of marijuana, that there was marijuana inside the residence.

But, also like his prior possession conviction, Defendant's prior convictions for possession with intent to distribute marijuana are of minimal probative value because

34

Defendant did not contest his knowledge of marijuana and because the government did not introduce evidence suggesting that Defendant's knowledge of marijuana would have permitted him to identify the smell as emanating from the deadbolt-locked bedroom. *See supra* Part IV.B. And, as was the case with his prior possession conviction, Defendant's prior possession with intent to distribute convictions were highly prejudicial because of the absence of other evidence supporting the charges against Defendant and the resulting increased risk that the jury would use the prior convictions for an improper purpose—to punish Defendant for his prior bad acts, rather than the charged conduct. *See supra* Part IV.B.

Additionally, Defendant's prior possession with intent to distribute convictions were arguably even more prejudicial than his prior possession conviction because "prejudicial impact is only heightened when character evidence is admitted in the form of a prior criminal conviction, especially a prior conviction for the same crime as that being tried." *Caldwell*, 760 F.3d at 284. Given that Defendant's prior convictions for possession with intent to distribute marijuana were highly prejudicial and had minimal probative value regarding Defendant's knowledge of the marijuana in the locked bedroom—not to mention the guns also located inside that bedroom—we conclude that the district court abused its discretion in admitting those convictions to establish knowledge.

* * * * *

In sum, we conclude that Defendant's prior possession with intent to distribute convictions were not relevant to his intent to distribute the marijuana in the locked bedroom, except to raise the very propensity inference Rule 404(b) prohibits. And the

35

minimal relevance of such prior convictions to establishing Defendant's knowledge that the locked bedroom contained marijuana was significantly outweighed by their extreme prejudice to Defendant. Accordingly, the district court abused its discretion in admitting Defendant's prior possession with intent to distribute convictions.[6]

## VI.

The government nevertheless argues that the district court did not abuse its discretion in admitting Defendant's prior convictions for four reasons: (1) under our precedent, Rule 404(b) is a rule of "inclusion," rendering the prior convictions presumptively admissible; (2) Defendant placed his intent and knowledge at issue by pleading not guilty; (3) the present case is indistinguishable from *United States v. Rooks*, 596 F.3d 204 (4th Cir. 2010), in which we deemed a prior possession with intent to distribute conviction admissible to establish knowledge and intent; and (4) the district court's limiting instruction negated any prejudice resulting from admission of the prior convictions. We disagree. The government's arguments reflect a fundamental

---

[6] Defendant does not argue on appeal that the district court erred in admitting his prior convictions to establish intent when the government did not argue that intent was a proper purpose for introducing the prior acts under Rule 404(b) and instead sought to introduce the prior convictions only to prove Defendant's knowledge that the Steadham Road residence contained marijuana. J.A. 22–23 ("[T]he Defendant's prior convictions for [possession with intent to distribute] marijuana certainly go to his knowledge . . . absent mistake that there's marijuana in his house . . . ."). We, however, note that it was error for the district court to admit Defendant's prior convictions to establish intent when the government (1) never sought admission of the convictions to establish intent; and (2) did not provide a propensity-free chain of inferences explaining the prior convictions' relevance to intent. *Davis*, 726 F.3d at 442.

misunderstanding of our case law regarding the admissibility of a defendant's prior convictions under Rule 404(b).

A.

The government first argues that our longstanding characterization of Rule 404(b) as an "inclusive rule" renders evidence of a defendant's prior convictions presumptively admissible and, therefore, weighs in favor of affirming the district court's admission of Defendant's convictions. *See* Appellee's Br. at 17 (quoting *Powers*, 59 F.3d at 1464).

Our characterization of Rule 404(b) as a rule of inclusion reflects our determination that the Rule's list of non-propensity uses of prior bad acts evidence is not "exhaustive." *See United States v. Stockton*, 788 F.2d 210, 219 n.15 (4th Cir. 1986); *Caldwell*, 760 F.3d at 276 ("Our use of the term 'inclusionary' merely reiterates the drafters' decision to not restrict the non-propensity uses of evidence."). That characterization does not displace the longstanding rule that prior "bad act" evidence is "general[ly] inadmissib[le]."[7] *McBride*,

---

[7] For this reason, the dissenting opinion's reliance on our statement that "evidence of a defendant's prior, similar drug transactions is generally admissible under Rule 404(b) as evidence of the defendant's knowledge and intent" is misplaced. *See post* at 6 (internal quotation marks omitted) (quoting *United States v. Cabrera-Beltran*, 660 F.3d 742, 755 (4th Cir. 2011)). *United States v. Cabrera-Beltran*, 660 F.3d 742 (4th Cir. 2011), does not compel the admission of all of a defendant's prior drug transactions in cases in which the defendant is later charged with the same drug offense. To the contrary, *Cabrera-Beltran* requires that prior drug transactions be "similar" to the charged offense to be admissible under Rule 404(b)—a requirement that the government failed to meet in this case. *See supra* Part V.A; *Cabrera-Beltran*, 660 F.3d at 755–56 (explaining that "the conduct charged in the indictment is *exceedingly similar* to the conduct" involved in the defendant's prior drug transactions in that "the same drugs were sold in similar quantities and transported in a similar manner, even allegedly using the same car in one instance" (emphasis added)).

676 F.3d at 395; *see also, e.g.*, *Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Federal Rule of Evidence 404(b) . . . *generally prohibits* the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character . . . ." (emphasis added)).

Accordingly, our characterization of Rule 404(b) as a rule of inclusion does not render prior convictions presumptively admissible. *Caldwell*, 760 F.3d at 276 (stating that, notwithstanding the Third Circuit's characterization of Rule 404(b)'s list of permissible purposes as inclusive, "Rule 404(b) is a rule of general exclusion, and carries with it 'no presumption of admissibility'" (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:28, at 731 (4th ed. 2013))). On the contrary, under Rule 404(b), evidence of a defendant's prior bad acts is generally inadmissible, properly coming into evidence only when the government meets its burden to explain each proper purpose for which it seeks to introduce the evidence, to present a propensity-free chain of inferences supporting each purpose, and to establish that such evidence is relevant, necessary, reliable, and not unduly prejudicial. *Queen*, 132 F.3d at 997; *Davis*, 726 F.3d at 442. Here, the government simply did not meet this burden because Defendant's prior convictions were either irrelevant or unduly prejudicial. *See supra* Parts IV–V.

B.

The government next contends that, by pleading not guilty to the charged offenses, Defendant placed all elements of those offenses at issue, thereby allowing the government to introduce evidence of Defendant's prior convictions to establish his knowledge and intent. But "[a]lthough a defendant's plea of not guilty places at issue all elements of the charged crimes, this does not throw open the door to any sort of other crimes evidence."

38

*McBride*, 676 F.3d at 398 (citation and internal quotation marks omitted); *see also* *Hernandez*, 975 F.2d at 1039 ("It is a truism that a plea of 'not guilty' to a charge requiring intent places that mental state in issue and that the state may offer evidence of other bad acts to address that issue. This principle, however, does not permit any sort of uncharged bad act to be brought to bear against defendants charged with intentional crimes." (citations omitted)). If a defendant's claim of innocence always permitted the government to introduce evidence of a defendant's prior bad acts, "the resulting exception would swallow the general rule against admission of prior bad acts." *Miller*, 673 F.3d at 697; *Caldwell*, 760 F.3d at 281 ("We disagree, however, with the proposition that, merely by denying guilt of an offense with a knowledge-based *mens rea*, a defendant opens the door to admissibility of prior convictions of the same crime.").

In *Hernandez*, this Court explained that the type of defense a defendant presents at trial affects the admissibility of other acts evidence under Rule 404(b), even when the defendant pleads not guilty and, in so doing, formally places all elements of the charged offense at issue. 975 F.2d at 1039. There, the government sought to introduce evidence of the defendant's prior participation in a crack distribution conspiracy to establish her intent to distribute crack as part of a different conspiracy in a different city. *Id.* At trial, the defendant pled not guilty but did not contest her intent to distribute crack or claim that she "had never touched crack or did not know what it was." *Id.* Rather, she "offered as her defense the contention that she had not sold the crack in question." *Id.* Notwithstanding that the defendant pled not guilty, we held that the district court abused its discretion in admitting the prior bad acts evidence to establish intent because "the relevance of [the other

39

acts] testimony was at best small" and the effect of its admission was highly prejudicial. *Id.*

*Hernandez* reflects the general principle that even when a defendant enters a plea of not guilty, thereby formally placing all elements of the charged offense at issue, a defendant's decision not to contest certain elements of the charged offense may so diminish the probative value of prior bad acts evidence that such evidence becomes unduly prejudicial and, therefore, inadmissible under Rule 404(b).[8] *Cf. McBride*, 676 F.3d at 403–04 (Wilkinson, J., dissenting) (recognizing that "factual iterations" like the defense presented at trial and whether the denial of certain elements "was central to the entire defense" can "make or break the case for admissibility"). Put differently, when a defendant does not contest a particular element of a charged offense, that element is "'at issue' in only the most attenuated sense," minimizing the probative value of any prior bad act the government maintains is relevant to that uncontested element. *Miller*, 673 F.3d at 697.

Because Defendant did not contest his knowledge of marijuana inside the Steadham Road residence or his intent to distribute the marijuana (had he possessed it), the probative value of his years-old prior convictions to his knowledge and intent was "at best small" and, therefore, was far outweighed by the highly prejudicial nature of the prior convictions.

---

[8] The dissenting opinion implies that *Hernandez* rejects outright the notion that a defendant's decision not to dispute an element of the charged offense renders prior bad acts evidence tending to prove that element less relevant. *Post* at 12. But, as discussed, *Hernandez* takes a more nuanced approach by making clear that choosing not to contest a particular element renders the relevance of bad acts evidence offered to prove that element "at best small"—even when the defendant chooses to plead not guilty. 975 F.2d at 1039. We adopt the same approach here.

*Hernandez*, 975 F.2d at 1039; *see also Miller*, 673 F.3d at 697 ("When, as was true here, intent is not meaningfully disputed by the defense, and the bad acts evidence is relevant to intent only because it implies a pattern or propensity to so intend, the trial court abuses its discretion by admitting it.").

C.

Third, the government argues that the district court's admission of Defendant's prior convictions is supported by this Court's decision in *Rooks*, in which we concluded that a district court did not abuse its discretion in admitting a defendant's prior possession with intent to distribute conviction to establish the defendant's intent to distribute drugs at a later time. 596 F.3d at 211–12. In *Rooks*, an officer watched the defendant discard a plastic bag containing twenty-four individual baggies of crack cocaine while fleeing from police. *Id.* at 207. Because the officer observed the defendant actually possessing the drugs, the centrally disputed issue in *Rooks* was whether the defendant *intended to distribute* the drugs he discarded, *id.* at 211—not whether the defendant had the power to exercise dominion and control over the drugs, which is the only contested issue in the case at bar.

This distinction is material. As explained above, when a defendant does not contest an element of a charged crime—such as knowledge or intent—the probative value of prior bad act evidence establishing that element decreases. *See supra* Parts IV.B, V.B & VI.B. And when the probative value of prior bad act evidence decreases, there is increased risk that the jury will use the prior bad act evidence—already recognized as highly prejudicial— for a purpose Rule 404(b) prohibits, *i.e.*, to convict the defendant for his prior bad acts or "simply for possessing bad character." *Queen*, 132 F.3d at 995. Because, unlike in *Rooks*,

41

Defendant's prior convictions were not probative of a *contested* element of the charged offense, our holding in *Rooks* that the district court did not abuse its discretion in admitting the defendant's prior conviction does not control the present case. Rather, the case at bar stands in line with *Johnson*, *McBride*, and *Hernandez*, in which we found that the district court abused its discretion in admitting evidence of prior bad acts that were not probative of a contested element of the charged offense or not similar to the charged offense. *See supra* Part V.A.

## D.

Finally, the government argues that the district court's limiting instruction negated any prejudice resulting from admission of Defendant's prior convictions. We agree that limiting instructions serve as "additional protection" against undue prejudice. *See, e.g.*, *Queen*, 132 F.3d at 997. But evidence that fails to satisfy the *Queen* test cannot be rendered admissible simply because the district court provides a limiting instruction. *McBride*, 676 F.3d at 399 n.5 ("A jury instruction, while a required condition for the admission of any evidence pursuant to Rule 404(b), does not necessarily rescue the use of otherwise inadmissible evidence."); *Johnson*, 617 F.3d at 298 (finding error "despite the district court's limiting instruction" where "the proponent of Rule 404(b) evidence cannot demonstrate that the evidence satisfies our four-part test for admissibility"). Here, Defendant's prior convictions were irrelevant or unduly prejudicial and therefore inadmissible under Rule 404(b)—problems a limiting instruction cannot cure.

## VII.

"Evidentiary rulings are subject to harmless error review under Federal Rule of Criminal Procedure 52." *Johnson*, 617 F.3d at 292. "[T]he appropriate test of harmlessness in the context of Rule 404(b) is whether we can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.'" *McBride*, 676 F.3d at 400 (quoting *United States v. Madden*, 38 F.3d 747, 753 (4th Cir. 1994)). Our harmlessness inquiry is not a sufficiency of the evidence analysis. *Id.* Rather, even if the government adduced sufficient evidence to support Defendant's conviction, we must consider whether the prejudicial nature of Defendant's prior convictions may have swayed the jury's judgment. *Id.* The government bears the burden of establishing that the error was harmless.[9] *United States v. Curbelo*, 343 F.3d 273, 286 (4th Cir. 2003).

We conclude that the government cannot establish harmlessness for at least two reasons: (1) the relative weakness of the government's overall case against Defendant; and (2) the government's improper use of Defendant's prior marijuana convictions for a purpose other than that for which the district court admitted them.

A.

An error is less likely to be harmless when the government's case is weak because, in that scenario, even a small error has the potential to sway the jury's judgment in light of

---

[9] The government acknowledged at oral argument that it likely waived harmless error review by failing to argue harmlessness in its brief. Fed. R. App. P. 28(b). While we agree that the government waived this argument by failing to raise it in its brief, we further conclude that the government's harmlessness argument fails on the merits.

the absence of other evidence supporting a finding of guilt. *See Johnson*, 617 F.3d at 298–99 (finding, "given the overall weakness of the government's case against" the defendant, that the district court's improper admission of other acts evidence was not harmless). Because Defendant did not contest his knowledge of the marijuana or his intent to distribute the marijuana found inside the locked bedroom, the only contested issue for the jury to decide was whether Defendant had the power to exercise dominion and control over the marijuana and guns in the locked bedroom. As explained above, the government introduced virtually no evidence on that issue. *See supra* Part IV.B. In particular, the government did not provide evidence that Defendant had a key to the deadbolt on the locked bedroom door, or had even been inside the locked bedroom at any time. *See supra* Part IV.B. Nor did the government provide evidence that Defendant had ever come into contact with the guns or marijuana, let alone that Defendant had the power to exercise dominion and control over them. *See supra* Part IV.B.

At most, the government's evidence established that Defendant lived, at least some of the time, in the Steadham Road residence, in which officers found the marijuana and guns. But "dominion and control cannot be established by mere proximity to the contraband, by mere presence on the property where the contraband is found, or by mere association with the person who does control the contraband." *Blue*, 808 F.3d at 232. And "[m]ere joint tenancy of a residence is insufficient to prescribe possession [of its contents] to all the occupants." *Id.* (alterations in original) (internal quotation marks omitted); *Zeigler*, 994 F.2d at 848 ("Those who spend considerable time in another's [residence], even those who 'live' there, do not for that reason possess everything on the premises.").

44

"Rather, [i]n joint occupancy cases, there must be some additional nexus linking the defendant to the contraband." *Blue*, 808 F.3d at 232 (alteration in original) (internal quotation marks omitted). For this reason, this Court and other courts have concluded that the government failed to adduce sufficient evidence to establish a defendant's constructive possession of contraband in a residence he or she jointly occupied when, as is true here, there was no evidence that the defendant had access to or had ever been in the specific place in which the contraband was found. *Id.* at 234; *Brown*, 3 F.3d at 680–81; *Zeigler*, 994 F.2d at 847–48.

Because "the government presented no evidence, circumstantial or direct, that [Defendant] ever entered the [deadbolt-locked bedroom] or had the [key] to the lock[] on its door," *Zeigler*, 994 F.2d at 848, and did not offer any "additional nexus linking the defendant to the contraband," *Blue*, 808 F.3d at 232, the government's evidence regarding Defendant's dominion and control over the marijuana in the locked bedroom was weak, at best. And the government's evidence of Defendant's ability to exercise dominion and control over the guns also found inside the locked bedroom was even weaker. From the absence of other evidence establishing Defendant's constructive possession of the guns, the record shows that the government bootstrapped Defendant's constructive possession of the guns onto his alleged constructive possession of the marijuana, based on his knowledge of marijuana's odor and, according to the government, resulting knowledge that the Steadham Road residence contained marijuana. But, as Defendant's trial counsel rightly pointed out, Defendant "didn't smell" the guns, J.A. 24, and the government adduced no other evidence linking him to those guns or to the locked bedroom in which they were

45

found.  The government's case against Defendant for constructive possession of both the marijuana and the guns thus hinged upon Defendant's past experience with the smell of marijuana and resulting knowledge of its presence inside the residence.

In such circumstances, the government cannot meet its burden to establish "that it is highly probable that the error did not affect the jury's judgment regarding" whether Defendant constructively possessed the marijuana and guns.  *McBride*, 676 F.3d at 400 (emphasis omitted).  Accordingly, we conclude that the district court's errant admission of Defendant's prior convictions was not harmless.  *See Johnson*, 617 F.3d at 298–99 (finding, "given the overall weakness of the government's case against" the defendant, that the district court's improper admission of other acts evidence was not harmless).[10]

### B.

Even if the government had presented stronger evidence of Defendant's possession of the contraband in the locked bedroom, the government's improper use of the prior convictions during its closing argument would preclude a finding of harmlessness.  As previously noted, during its closing argument, the government used Defendant's prior convictions to discredit Gerald's testimony that he alone possessed the marijuana and guns.

---

[10] Based on the evidence presented at trial, the jury could have believed that Defendant lived at the Steadham Road residence along with Sulton, Hendrix, and Gerald. Because the government did not charge the other three occupants of the Steadham Road residence—who, based on the record, had no prior convictions but otherwise stood in the same position as Defendant relative to the contraband in the locked bedroom—there is an "unacceptable risk" that Defendant's "prior conviction allowed the jury to convict h[im] upon facts that would likely have been insufficient to convict a similarly situated defendant without a prior conviction," further indicating that the errant admission of Defendant's prior convictions was not harmless.  *Aguilar-Aranceta*, 58 F.3d at 802.

In particular, the government argued that Gerald—"the fall guy for the family"—lied about his ownership of the contraband to help Defendant, who, in the event of conviction, would face a longer sentence due to his criminal record. J.A. 143–44.

Notwithstanding its obligation to identify and explain the logical sequence of non-propensity inferences supporting each purpose for which it sought to admit Defendant's prior convictions, *see supra* Part III, the government did not ask the court for leave to introduce those convictions to discredit Gerald's testimony, nor did the district court authorize the government to use Defendant's convictions for that purpose.[11] On the contrary, the district court's limiting instruction informed the jury that the prior convictions were admitted "*only* on the issue of knowledge and intent." J.A. 64 (emphasis added). The government's use of Defendant's prior convictions to support its "fall guy" theory may have factored in to the jury's decision to convict Defendant, notwithstanding that the court never evaluated whether or concluded that the convictions were admissible under Rule 404(b) for that purpose. And the government's use of Defendant's prior convictions to discredit Gerald undermined the court's limiting instruction by suggesting to the jury that it had license to use the convictions for purposes other than those approved by the court,

---

[11] Because the government did not seek admission of Defendant's prior convictions for the purpose of discrediting Gerald—and, therefore, the district court could not have admitted the convictions for that purpose, *see supra* Part III—we need not decide whether discrediting Gerald was a proper purpose for introducing Defendant's prior convictions under Rule 404(b). We find it questionable, however, that a *defendant's* prior conviction would be admissible to discredit a *witness* testifying on the defendant's behalf based solely on the theory that the witness is more likely to lie because a defendant with a criminal record would face a longer sentence if convicted.

thereby further increasing the risk that the jury's judgment would be improperly swayed by the court's errant admission of the prior convictions.

For these reasons, the government cannot establish that the district court's errant admission of Defendant's prior convictions was harmless.

VIII.

The dissenting opinion's extrajudicial, editorial comments and misrepresentation of this case's holding open the need for a separate discussion. The dissent characterizes our holding as a usurpation of the district court's discretionary authority over evidentiary issues, a pronouncement that prior drug distribution convictions are hardly ever relevant in future drug prosecutions, and a departure from Circuit authority. For the reasons that follow, that reading of the majority opinion is simply inaccurate.

A.

The dissenting opinion denounces the majority opinion as a usurpation of what the dissent seems to characterize as the district court's unbridled authority over "[a]dmitting or excluding evidence." *Post* at 1. According to the dissenting opinion, we should simply "keep [our] hands off" the "perfectly acceptable, indeed [] correct, discretionary call at trial to admit evidence of [Defendant]'s prior convictions." *Post* at 1. But "[e]ven the briefest perusal of the record tells a dramatically different story," *post* at 2, about the district court's decision to admit Defendant's prior convictions. Far from a "routine discretionary call," *post* at 12, the district court's determination that Defendant's prior convictions were admissible under Rule 404(b) was an erroneous *legal conclusion* based on (1) a misreading of this Court's unpublished opinion in *United States v. White*, 519 F. App'x 797 (4th Cir.

48

2013); (2) a mistaken belief that *White* was binding authority; and (3) an absence of facts explaining the alleged relevance of Defendant's prior convictions to the charged conduct, without which the district court could not possibly have had information on which to base an informed exercise of its discretion.

In support of its argument that Defendant's prior convictions were admissible under Rule 404(b), the government provided the district court with *United States v. White*, an unpublished opinion authored by a panel of this Court. In that case, two defendants were charged with several offenses, including conspiracy to distribute cocaine and cocaine base as well as possession with intent to distribute cocaine and cocaine base. 519 F. A'ppx at 799. The panel affirmed the district court's decision to admit "a prior narcotics conviction for each" defendant under Rule 404(b). *Id.* at 804–06. In so doing, the panel explained that the district court "reason[ed] that the evidence was admissible because it related to the knowledge and intent necessary to commit the crimes for which [the defendants] were on trial" and also "reasoned that the evidence would not unfairly prejudice" the defendants. *Id.* at 804–05.

Rather than interpreting *White* as permitting defendants' prior convictions to be admitted under Rule 404(b) when, in a district court's reasoned opinion, those prior convictions are sufficiently similar to the charged offense to be relevant and not unfairly prejudicial, the district court appears to have read *White* as standing for the far broader principle that, when a limiting instruction is provided, a prior conviction is categorically admissible under Rule 404(b) in a subsequent prosecution for the same offense. But *White* does not stand for this principle. Rather, *White* was based on our conclusion that the

49

defendants' prior convictions were "*similar* to the charges they faced in this case" and, therefore, were "relevant to whether they possessed the requisite knowledge and intent to commit the narcotics crimes with which they were charged." 519 F. A'ppx at 806 (emphasis added). And our conclusion regarding the prejudicial effect of the defendants' prior convictions was not based solely on the fact that the district court gave the jury a limiting instruction. *Id.* Instead, our holding was based on the defendant's failure to provide evidence that prejudice resulted in spite of that limiting instruction. *Id.*

*White* does not stand for the idea that prior drug convictions are categorically admissible under Rule 404(b) in subsequent drug prosecutions, nor does it provide support for the notion that "a proper limiting instruction" is the only prerequisite for admitting evidence of a defendant's prior convictions under Rule 404(b). J.A. 61–62. And as discussed, neither principle is consistent with the binding law of this Circuit. *Johnson*, 617 F.3d at 297 ("The fact that a defendant may have been involved in drug activity in the past does not in and of itself provide a sufficient nexus to the charged conduct where the prior activity is not related in time, manner, place, or pattern of conduct."); *McBride*, 676 F.3d at 399 n.5 ("A jury instruction, while a required condition for the admission of any evidence pursuant to Rule 404(b), does not necessarily rescue the use of otherwise inadmissible evidence."). The district court misread *White* and admitted Defendant's prior drug convictions based on that misreading.

But the district court's error did not end there. In addition to misinterpreting *White*'s holding, the district court also treated *White*, an unpublished opinion, as binding precedent. But, of course, we make clear in every unpublished opinion that "[u]npublished opinions

50

*are not binding precedent in this circuit*." *E.g.*, *White*, 519 F. App'x at 799 (emphasis added). Combined, these errors formed the district court's basis for admitting Defendant's prior convictions, as evidenced by the court's statement that it was admitting the convictions reluctantly and only "[i]n light of this *White* case. I don't like it. I'm not sure Rule 404(b) was drafted to be that broadly construed, but that is the way it has been construed, *and I am bound by my oath to follow the Fourth Circuit law*." J.A. 62 (emphasis added).

Notably, before reading *White*, the district court had suggested that it did not see Defendant's prior convictions as relevant to proving his intent to distribute the marijuana inside the Steadham Road residence. When the government first moved to introduce Defendant's prior convictions to prove his knowledge of the marijuana, the district court was skeptical of the government's theory. The court acknowledged that law enforcement officers' testimony that "they smelled marijuana as soon as they went in[side]" the residence would be admissible, but it failed to understand how that testimony "tie[d] together" with Defendant's prior convictions. J.A. 23. In particular, the district court expressed its view that whether Defendant's prior convictions were relevant to his knowledge of the marijuana would "depend on what kind of defense he puts up . . . assuming he testifies and says he never dealt with marijuana." J.A. 23–24. It was only after the district court misread *White* and interpreted that case as binding that the court concluded that, regardless of the defense Defendant pursued, Defendant's prior convictions were admissible. And even then, the district court expressed concern over the sheer breadth of this application of Rule 404(b), doubting that the rule "was drafted to be that broadly

51

construed." J.A. 62. The district court's statements suggest that the court understood *White* as foreclosing the court's ability to exercise its discretion to exclude Defendant's prior convictions and that, had the court believed otherwise, it would have exercised its discretion to find those prior convictions inadmissible under Rule 404(b).

At bottom, the district court's decision to admit Defendant's prior convictions under Rule 404(b) was not, as our dissenting colleague claims, a "routine discretionary call." *Post* at 12. The district court never conducted a *Queen* analysis, never considered whether Defendant's prior convictions were similar to the charged offense such that there was a "nexus" or "linkage" among them—nor could it have, given the government's failure to provide such evidence—and never balanced the convictions' probative value against their potential prejudicial effect. To urge, as the dissenting opinion does, that the district court "concluded in the end that the evidence was relevant to knowledge and intent," *post* at 12, is far too generous a characterization of the district court's decision, which, in reality, had its roots in two legal errors. And to insist that we overlook such clear errors in the name of "respect [for] a trial court's job," *post* at 13, is to sacrifice the fundamental role of appellate courts on the altar of deference, *see United States v. Taylor*, 487 U.S. 326, 336 (1988) ("[A] decision calling for the exercise of judicial discretion hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review." (internal quotation marks omitted)).

## B.

But we do not lay the blame entirely, or even mostly, at the district court's feet. It is true that the district court's decision to admit Defendant's prior convictions was based

52

on its misinterpretation of *White* and misapprehension of *White* as binding precedent. But the district court was hard pressed to conduct *any* Rule 404(b) analysis given the government's failure to meet its burden to explain each proper purpose for which it sought to introduce the evidence, to support those purposes with propensity-free chains of inferences demonstrating relevance, and to establish that the prior convictions were necessary, reliable, and not unduly prejudicial. *Queen*, 132 F.3d at 997; *Davis*, 726 F.3d at 442.

As discussed above, the government offered *no* evidence to suggest that Defendant's prior convictions were relevant in time, place, manner, or pattern of conduct to the offense at issue in this case. *See supra* Part V.A. On the contrary, the government provided the district court only with the statute under which Defendant was convicted, the name of each offense, and the year of each conviction. The government never argued that there was any "linkage between the prior-act evidence and the drug crimes charged in the indictment." *McBride*, 676 F.3d at 397. Nor did the government cite any case law—other than *White*—to support its argument that Defendant's prior convictions were admissible to establish his knowledge of the marijuana inside the residence.

In fact, the dissenting opinion does more to argue for admission of Defendant's prior convictions than the government did below. Citing *Rooks*, the dissenting opinion maintains that Defendant's prior convictions were admissible to show "his extensive knowledge of marijuana sales and distribution, and therefore his related intent to engage yet again in just such prohibited conduct." *Post* at 8. The first problem with this line of reasoning is that it lacks the appropriate analytical framework, lumping together for consideration both

53

Defendant's prior *possession* conviction—which can have no bearing on his future intent to distribute, *see supra* Part IV.A—and his prior *possession with intent to distribute* convictions.

The second problem with the dissenting opinion's rationale is that it advances an argument the government failed to make. In addition to neglecting to provide any evidence of temporal proximity or factual similarity between Defendant's prior convictions and the charged offenses, the government failed to assert that the prior convictions were relevant to Defendant's "knowledge of marijuana sales and distribution." *Post* at 8. And the government never proposed intent as a proper purpose for which Defendant's prior convictions could be introduced under Rule 404(b). Indeed, the government argued only that the prior convictions were relevant to proving Defendant's knowledge of the smell of marijuana. The government's failure to suggest that Defendant's prior offenses were admissible to establish his knowledge of marijuana distribution or his intent to distribute deprived the district court of an opportunity to conduct a *Queen* analysis to determine whether Defendant's prior convictions were relevant to those purposes and whether, if relevant to those purposes, the convictions were nevertheless unduly prejudicial. Nor could the district court have ensured that Defendant's prior convictions were relevant to something other than his propensity to commit drug crimes.

Continuing to make arguments the government failed to make, the dissenting opinion cites *United States v. Mark*, 943 F.2d 444 (4th Cir. 1991), as a basis for affirming the district court's decision to admit Defendant's prior convictions. In *Mark*, we upheld a district court's admission of the defendant's prior convictions to show that the defendant

54

was "not an innocent friend of his codefendants but rather was . . . responsible for the transaction at issue." 943 F.2d at 448. According to our colleague in dissent, *Mark* stands for the proposition that Defendant's decision to point the finger at Gerald as the sole person with an interest in the marijuana inside the Steadham Road residence rendered Defendant's prior convictions—both for possession and possession with intent to distribute— "immediately relevant." *Post* at 8.

But what the dissenting opinion omits from its analysis is that *Mark* affirmed a district court's admission of the defendant's prior convictions based on the conclusion that those convictions were "*sufficiently related* to the charged offense and clearly relevant" to prove intent and knowledge. 943 F.2d at 448 (emphasis added). In particular, we found in *Mark* that the prior drug transactions admitted into evidence "occurred in the *same state* and during the *same year* [Mark] was arrested" on the charged offenses. *Johnson*, 617 F.3d at 297. Moreover, the admission of evidence of Mark's prior drug transactions through witness testimony established "how [Mark] was able to obtain the drugs which he later sold to his codefendants." *Id.* In other words, Mark's prior drug transactions demonstrated how Mark obtained *the very drugs he was charged with distributing*. *Id.* And finally, Mark placed his intent to be part of the charged drug distribution conspiracy squarely in dispute by "testif[ying] on his own behalf" that his relationship to his codefendants was "innocuous." *Id.* *Mark* presents precisely the type of "linkage" between prior drug convictions and charged offenses that is necessary to establish relevance—and precisely the type of "linkage" that is absent in this case. *See supra* Part V.A.

55

Here, the government presented no evidence that Defendant's prior convictions were at all related to the charged offense. As discussed *supra* Part V.A, the offenses giving rise to Defendant's prior convictions occurred over five years before the events underlying the instant offenses. There was *no connection* put forth by the government—or apparent from the record—between the marijuana inside the Steadham Road residence and the marijuana Defendant previously had been convicted of possessing that would indicate that Defendant obtained the marijuana from the same source, sold the drug to the same people, or engaged in similar practices regarding the drug's distribution. And, unlike Mark, Defendant did not contest the elements his prior convictions were offered to prove— knowledge and intent.

Finally, we note that the dissenting opinion implies that the government's case against Defendant was open and shut. *Post* at 3–4. But the record suggests that the government did not share that opinion. In an attempt to explain the lack of evidence linking Defendant to the locked back-right bedroom or to the contraband found inside it, the government called an expert witness to explain to the jury why fingerprints were not found anywhere in the room, much less on the contraband. It is this acknowledged absence of evidence linking Defendant to the locked bedroom—an absence not remedied by the dissenting opinion's repeated appeal to evidence linking Defendant to the *residence*—that increased impermissibly the prejudicial effect of Defendant's prior convictions as offered to establish his constructive possession of the marijuana and guns inside that locked room. *See supra* Part IV.B, V.B.

56

And even if the government's case were the slam dunk the dissenting opinion portrays it as, that fact alone would not render the district court's legal error harmless. To the contrary, "the question is not simply whether we believe that irrespective of the error there was sufficient untainted evidence to convict but, more stringently, whether we believe it highly probable that the error did not affect the judgment." *McBride*, 676 F.3d at 400 (internal quotation marks omitted). And in cases involving the presentation of testimony that "effectively brand[s]" the Defendant as a drug dealer "based on events completely unrelated to the offenses for which he was being tried," the nature of that testimony becomes so prejudicial that even the strongest of cases cannot render the Rule 404(b) error harmless. *Id.*

## C.

Perhaps the dissenting opinion's greatest flaw is its mischaracterization of our holding. The dissent implies that the outcome of this case renders prior drug distribution convictions categorically irrelevant and inadmissible under Rule 404(b) in future drug prosecutions. *Post* at 1 ("Apparently, past distributional drug convictions are now to be regarded as hardly relevant[.]"). That is not the case.

Our holding does no more than hold the government to its burden to demonstrate the relevance of other acts evidence by establishing that a prior bad act is sufficiently related in time, place, manner, pattern of conduct, or state of mind, and, in addition, that the evidence is necessary, reliable, and not unduly prejudicial. *Johnson*, 617 F.3d at 297; *Queen*, 132 F.3d at 997; *Davis*, 726 F.3d at 442. This is nothing new. Nor does it represent a "naked policy judgment[]" that prior drug distribution convictions are "hardly relevant"

57

in future drug prosecutions.[12] *See post* at 1–2.  Indeed, we cite favorably decisions in which

this Court has deemed prior bad acts relevant to the defendant's charged conduct.  *See, e.g.*,

*supra* Part V.A (discussing *Rawle* and *Brewer*).  Notably, however, those decisions deemed

the other acts evidence relevant on the basis of "linkage between the prior-act evidence and

the drug crimes charged in the indictment."  *McBride*, 676 F.3d at 397.  In other words, the

government met its burden in those cases—something it failed to do here.

Although the dissenting opinion accuses the majority of "disregard[ing] circuit

precedent at every turn," *post* at 11–12, it is the dissent that disregards at least three

substantially similar cases in which this Court has deemed admission of a defendant's prior

---

[12] Because the dissenting opinion characterizes our reasoning as rendering prior drug convictions "hardly relevant" in future drug prosecutions, *see post* at 1, we highlight that we did not decide this case by deeming all of Defendant's prior convictions irrelevant to the drug charge at issue.  Instead—and unlike the dissenting opinion—we analyzed Defendant's prior possession conviction separately from his prior possession with intent to distribute convictions, and we considered each type of conviction as it related to (1) knowledge; and (2) intent to distribute—the purposes for which the district court instructed the jury it could use those convictions.  *See supra* Parts IV–V.  This is precisely the sequence of analysis Rule 404(b) requires.  We found only Defendant's prior possession conviction and prior possession with intent to distribute convictions irrelevant to Defendant's intent to distribute the marijuana inside the Steadham Road residence.  *See supra* Parts IV.A, V.A.  In so concluding, we did not close the door on the possibility that the government may meet its burden to establish a link between the facts and circumstances giving rise to prior drug distribution convictions and the conduct giving rise to a subsequent drug distribution charge sufficient to render those prior convictions relevant.  *See supra* Part V.A.  Nor did we conclude that Defendant's prior convictions were irrelevant to his *knowledge* that the residence contained marijuana.  *See supra* Parts IV.B, V.B.  This further demonstrates that our holding does not purport to render all drug distribution convictions inadmissible in future drug prosecutions, but instead holds the government to its burden to argue a non-propensity chain of inferences supporting each proper purpose for which it seeks to admit a Defendant's prior convictions and requires district courts to adhere to their longstanding obligation to conduct a *Queen* analysis.

drug distribution activity under Rule 404(b) an abuse of discretion. This Court found in *Hernandez*, *Johnson*, and *McBride* that a lack of temporal proximity and factual "nexus" between a defendant's prior bad acts and charged offense renders the prior acts not "sufficiently related to the charged offense" to be relevant under the first *Queen* prong. *See supra* Part V.A. Given that Defendant's prior convictions became final more than five years earlier and that the government failed to put forth any evidence establishing a "nexus" between those prior convictions and the charged offenses, our conclusion that Defendant's prior possession conviction and prior possession with intent to distribute convictions were not relevant to his intent to distribute the marijuana inside the Steadham Road residence represents nothing more than an application of this longstanding authority. Accordingly, the only way we would "disregard[] circuit precedent" would be if, like the dissent, we ignored *Hernandez*, *McBride*, and *Johnson* and held that Defendant's prior convictions were relevant and admissible under Rule 404(b).

* * * * *

Regrettably, the dissenting opinion characterizes us as "dukes and earls of the appellate kingdom," *post* at 13, thumbing our noses at the district court's reasoned and able exercise of discretion. That's simply disrespectful of the role of every appellate judge in this country. But more importantly, we as judges should seek to enhance, not erode, the public's confidence and trust in the integrity of the judicial process.

IX.

In its opening argument, the government told the jury, "This is a case about a drug dealer, a drug dealer who kept multiple guns to protect his drugs . . . . Ladies and

59

gentlemen, this is the case of the United States of America vs. Harold Hall, Jr." J.A. 42. The district court's admission of Defendant's unrelated prior convictions to establish knowledge and intent, in the absence of evidence connecting Defendant either to the deadbolt-locked bedroom or to the marijuana or guns found inside, allowed the case to become just that: a case about Defendant's character as "a drug dealer." By admitting Defendant's prior convictions, the district court gave rise to the very scenario Rule 404(b) is designed to prevent and deprived Defendant of his right to be "tried for *what* he did, not *who* he is." *Caldwell*, 760 F.3d at 276.

For these and the foregoing reasons, we reverse the district court's decision to admit Defendant's prior convictions under Rule 404(b), vacate Defendant's convictions, and remand to the district court for proceedings consistent with this opinion.

*REVERSED, VACATED, AND REMANDED*

60

WILKINSON, Circuit Judge, dissenting:

This case may seem just a matter of one small evidentiary ruling, and in a sense it is. In another sense, however, it demonstrates the encroachment of overactive appellate judging on the roles of district courts, juries, and advocates in the conduct of a trial. Not content with performing our own important and primary function, embodied in the de novo standard of review, we have assumed under a wholly different and deferential standard a trial court's most basic task.

Trial judges are called trial judges for a reason. The reason is that they conduct trials. Admitting or excluding evidence is what they do.

On evidentiary questions, especially those of non-constitutional dimension, appellate judges are best advised to keep hands off. Our instincts are less practiced than those of the trial bench and our sense for the rhythms of a trial less sure. Here the district judge made a perfectly acceptable, indeed a correct, discretionary call at trial to admit evidence of Hall's prior convictions. Those convictions were highly probative of Hall's present knowledge and intent. *See* FED. R. EVID. 404(b). Now, twenty-five months later, after sifting evidence at length and at our leisure, we presume to call that right choice wrong and to transform the Rule 404(b) light from yellow to a flashing red for even the most probative past drug offenses. Apparently, past distributional drug convictions are now to be regarded as hardly relevant, notwithstanding the fact that the drafters of Rule 404(b) have never carved out such offenses from other admissible bad acts evidence.

The majority's hostility to the admissibility gateways of Rule 404(b) and its eagerness to discount the probative force of past drug distributional offenses could not be

61

more apparent. But those are naked policy judgments that are not ours to make. Decisions such as these not only erode the trial court's role. They further insulate trials from the reality of life outside the courtroom and cast doubt on what I thought was one of the foremost features of American law—the right of a duly sworn and selected jury to assign what weight it would to evidence.

I.

As an initial observation, the majority's whole presentation of this case is simply incorrect. At least if the majority is prepared to assume the mantle of district judge (as to evidentiary rulings), and super-juror (as to harmless error), it should properly set forth the case that unfolded at trial. Overturning a jury verdict requires at a minimum a fair telling of what the jurors saw and heard. My good colleagues in the majority present Hall as a sympathetic defendant, plucked randomly from amongst his relatives and targeted for prosecution despite the fact that each "stood in the same position . . . relative to the contraband in the locked bedroom." Maj. Op. at 47 n.10. The majority goes so far as to suggest that the government's only evidence that Hall possessed or constructively possessed the marijuana at issue was his prior convictions. *Id.* at 2–3. Even the briefest perusal of the record tells a dramatically different story.

Shortly before officers executed the search warrant for the Steadham Road residence, they observed Hall leave the house with his cousin, Gerald. Hall entered a Ford Expedition that was parked in the driveway and registered in his name at that address. J.A. 195; 254–55. Officers had previously observed this same car in the driveway during a controlled drug purchase. J.A. 233. DMV records, moreover, disclosed additional vehicles

registered to Hall at that address as well. J.A. 195.

When Officer Brien Gwyn stopped Hall in his vehicle soon thereafter, Hall told Officer Gwyn that he lived at the Steadham Road residence. J.A. 257. Importantly, Hall stated that *he lived there alone*. J.A. 257. It is unsurprising, then, that officers executing the search warrant found the house empty while Hall was away. J.A 192–93. Later, when Officer Jerry Maldonado asked for Hall's address to complete an arrest report, Hall again indicated that he lived at the Steadham Road residence. J.A. 237. And where did cousin Gerald claim to live? Gerald told Officer Maldonado that he had no permanent address. J.A. 237. In fact, his South Carolina identification at that time listed an address on Bailey Street. J.A. 333.

Once officers entered the Steadham Road residence, they found a host of evidence indicating that Hall alone lived there. This included, for example, a recent utility bill in Hall's name, J.A. 195–96, additional mail directed to Hall at that location, J.A. 196, three computer monitors that Hall claimed he used to dispatch tractor-trailers for his trucking company, J.A. 193, and a shirt with Hall's driver's license and $1000 in cash, J.A. 198. The driver's license listed the Steadham Road residence as Hall's address. J.A. 198.

Investigator John Carwell summarized the search as follows: "Everything in the house was related to Harold Hall, Jr." J.A. 225. When asked if there was anything suggesting other occupants, his answer was concise: "No." J.A. 225. Until this time, officers were simply investigating an address tied to drug activity. Only after every piece of evidence pointed directly to Hall and no one else did they focus their efforts, and ultimately the indictment, on him. J.A. 226.

63

As the majority notes, Hall (with Gerald's connivance) eventually tried to eschew association with the Steadham Road residence and shift any blame for the marijuana to Gerald, who faced substantially less time. That defense, however, fell apart. Gerald failed even to recognize the blue container filled with bags of marijuana that was confiscated from the back bedroom. *See* J.A. 200–04, 303–04, 350. Gerald was also emphatic that the largest purchase of marijuana he ever made was "a half a pound of weed," J.A. 316–17, yet the government selected one of the confiscated bricks and showed the jury during closing arguments that it weighed over three pounds. J.A. 140–41.

Faced with the adverse jury verdict, the majority attempts to construct an alternate reality from the evidence adduced at trial. No one actually at the trial, however, would recognize the narrative spun by the majority. The majority suggests that Hall did not own the Steadham Road residence, despite Gerald's testimony that Hall's name was on "the thing . . . . for whoever owned the house." J.A. 328–29. The majority protests that Hall's fingerprints were not found on the guns or marijuana, conveniently overlooking both the absence of anyone's fingerprints and the expert testimony that the various textures were not prone to collecting them. J.A. 280–283. And as for the deadbolt key that Gerald allegedly kept with him "at all times," J.A. 324, he had no key to the back bedroom or the house when he was arrested, and no key was somehow ever found. J.A. 406–08. Even the majority is forced to concede that Hall told Officer Gwyn that he lived at the Steadham Road residence by himself. The majority notes that notwithstanding the absence of any permanent address on Gerald's arrest report, he testified at trial that, miraculously, he had lived at the Steadham Road residence for many years. The majority's opening paragraphs

64

in this opinion are at best a closing argument to a jury, which the jury, of course, unanimously rejected.

In the majority's view, every weakness it perceives in the government's evidence leads automatically to a finding of inadmissibility. This drastic leap from the contestable quality of evidence to the inadmissibility of the same ignores the fact that the whole function of a trial is to *test the strength of evidence*. It is this conflation of weight and admissibility that threatens to eclipse not only the trial court's discretion, but ultimately the advocates' and the jury's role.

The government did not pull Hall's name out of a hat or embark on a witch hunt against someone with prior drug convictions. Hall was not equally situated with his other family members who only belatedly discovered that they did, after all, somehow manage to live at the Steadham Road residence. The jury saw right through this. Spotting cock-and-bull stories is one thing we have juries for. The case came down crucially to Gerald's credibility, which the jury, as the trier of fact, had the opportunity to judge, and which the majority did not. For all the respect shown for the role of the jury in this case, it might as well have sat outside the courthouse in the rain.

## II.

Title 21 U.S.C. § 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally to . . . possess with intent to manufacture, distribute, or dispense, a controlled substance." Hall necessarily "placed these elements directly in issue by his plea of not guilty," and the government was required to prove each element beyond a reasonable doubt in order to secure a conviction. *United States v. Mark*, 943 F.2d 444,

65

448 (4th Cir. 1991).

Hall's whole defense put his knowledge of the drug, and his intent to distribute it, squarely into dispute. He claimed his knowledge of the illegal substance and the guns was minimal because they were all locked away in some back bedroom to which he had no access. He further adduced evidence that his cousin Gerald was the only one who had any intent to distribute the drugs and that Hall could not possibly have had any such plan. The elements of knowledge and intent, of course, are the very issues on which Rule 404(b) evidence is admissible. And this dispute was not some peripheral matter, as the majority contends. It was the whole show.

In the majority's view, Hall is entitled to a free pass. He gets to advance his claim of utter disinvolvement with the drug business in his own home while the government is left with a hand tied behind its back.

This was the precise evil which Rule 404(b) was intended to prevent. "In drug cases, evidence of a defendant's prior, similar drug transactions is generally admissible under Rule 404(b) as evidence of the defendant's knowledge and intent." *United States v. Cabrera-Beltran*, 660 F.3d 742, 755 (4th Cir. 2011). "Consequently, we have construed the exceptions to the inadmissibility of prior bad acts evidence broadly, and characterize Rule 404(b) as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Powers*, 59 F.3d 1460, 1464 (4th Cir. 1995) (internal quotation marks omitted); *see United States v. Briley*, 770 F.3d 267, 275 (4th Cir. 2014); *United States v. Rooks*, 596 F.3d 204, 211 (4th Cir. 2010). And it is longstanding law in this circuit that "we may sustain the admission of such

evidence on any viable theory." *United States v. Blauvelt*, 638 F.3d 281, 292 (4th Cir. 2011); *see, e.g.*, *Cabrera-Beltran*, 660 F.3d at 755; *United States v. Johnson*, 54 F.3d 1150, 1156 (4th Cir. 1995); *United States v. Boyd*, 53 F.3d 631, 637 (4th Cir. 1995); *United States v. Gallo*, 782 F.2d 1191, 1194 (4th Cir. 1986). Evidence of Hall's prior convictions was unquestionably relevant and highly probative, not as character evidence, but to establish knowing possession of marijuana with intent to distribute. It also explained why Hall was so willing to sacrifice his cousin Gerald in a thinly-veiled attempt to save himself from more serious punishment.

A.

The majority objects to the Rule 404(b) evidence on two chief grounds: (1) that the evidence was not relevant; and (2) that even if relevant, its probative value was so slight as to be outweighed by its prejudicial effect. Neither of these grounds can withstand scrutiny. I shall examine each in turn.

First as to relevance. Because the officers recognized an overwhelming smell of marijuana when they entered the house, Hall's extensive prior involvements with that very drug were relevant to show that he was aware of its presence and that his actual or constructive possession was therefore knowing or intentional, even if the contraband was stored behind a locked door. It matters not that Hall never denied familiarity with the smell because the government still had the burden to prove that Hall knew there was marijuana in his home, especially when Hall contested his association with and access to the back bedroom where the drugs were found. Establishing Hall's ability to recognize marijuana became all the more relevant when Hall's uncles claimed they were unaware any marijuana

67

was present at the Steadham Road residence. J.A. 363–64, 373, 380–81. In fact, Robert Hendrix testified that he could not smell the marijuana right next to him in the courtroom. J.A. 380–81. Hall's extensive familiarity with the drug, by contrast, separated him from those who claimed to share his residence.

In *United States v. Rooks*, we held that evidence of prior convictions is also admissible to show a defendant's "familiarity with the drug distribution business, as well as his intent to distribute the drugs recovered." 596 F.3d at 211. Hall's prior convictions were thus further relevant to establish his extensive knowledge of marijuana sales and distribution, and therefore his related intent to engage yet again in just such prohibited conduct.

Finally, Hall's three prior convictions for possession with intent to distribute were relevant to prove he was not just some innocent bystander to the illegal activity occurring in his home or amongst his family. In *United States v. Mark*, we affirmed the admissibility of prior drug activity to show that the defendant was "not an innocent friend of his codefendants but rather . . . was responsible for the transaction at issue." 943 F.2d at 448. When Hall tried to pin sole responsibility for the relevant crime on his cousin, despite Hall's own close connection to the illegal activity, Hall's prior history of committing the same offense became immediately relevant. The evidence was likewise necessary to place Hall's defense in context, exposing further Hall's transparent ploy to impose a minor punishment on Gerald rather than suffer his heightened punishment as a recidivist career offender. This was a routine case for the admission of Rule 404(b) evidence.

B.

Even if the evidence were relevant, the majority reasons, its slight probative value was outweighed by its prejudicial effect. *See* FED. R. EVID. 403. The probative value of the evidence, however, was anything but slight. Hall was indicted for knowing possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On March 5, 2004, Hall was previously convicted of possession with intent to distribute marijuana. On November 20, 2006, Hall was also convicted of possession of marijuana. On July 30, 2007, Hall was again convicted on two separate counts pertaining to two separate instances of possession with intent to distribute marijuana. The distributional convictions in particular were three in number, involved the very drug at issue here, and involved the distributional intent of which Hall stood accused, all of which combined to place the evidence within the realm of district court discretion. The resemblance and similarity to Hall's present conviction are self-evident.

We have consistently held that "[t]he more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater potential relevance of the prior act." *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012). Hall actually goes so far as to concede in his brief that "the prior convictions were so similar to the current charge of marijuana possession that they were arguably not evidence of 'other crimes' at all but evidence tending to show a series of transactions or crimes and, thus, direct evidence of guilt." Appellant's Br. at 33–34. Taking Hall at his word, evidence showing either a pattern or series of related transactions is not character evidence at all and is per se admissible. *See McBride*, 676 F.3d at 396; *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009). In his attempt to manufacture a distinction, Hall confirms the trial court's

69

ruling.

While Hall complains that this evidence was unfairly prejudicial, any prejudice came not through the impermissible character of the evidence, but from the fact that it was highly probative as to whether he possessed the knowledge and intent necessary to sustain a conviction. *See United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997). In an abundance of caution, the district court even provided a limiting instruction that was approved by both parties, advising the jury that Hall's prior convictions were "offered only on the issue of knowledge and intent." J.A. 64–65. We have repeatedly held that where, as here, "the trial judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may improperly use the evidence subsides." *Queen*, 132 F.3d at 997; *see, e.g.*, *Rooks*, 596 F.3d at 212; *United States v. Williams*, 461 F.3d 441, 451 (4th Cir. 2006); *United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005); *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004). Hall's prior convictions, moreover, could not have been unfairly prejudicial because they "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." *United States v. Byers*, 649 F.3d 197, 210 (4th Cir. 2011) (quoting *Boyd*, 53 F.3d at 637). Evidence does not become unfairly prejudicial simply by strengthening the case for conviction.

## C.

Finally, the majority attempts to paint this whole case as simply a matter of "dominion and control," pivoting not on knowledge and intent, but solely on the question of whether the defendant actually or constructively possessed the drugs in the back bedroom. There are, at last count, at least three reasons why the majority is wrong. The

70

first is that, as we have noted, Hall's case squarely put knowledge and intent at issue by claiming that his cousin Gerald was the only one to possess the necessary mens rea.

The second reason the majority's argument falters is ironically that it misconceives the government's burden of proof. The government had to prove every element of the offense with which Hall was charged. There was no stipulation or concession to any of them. Specifically, Hall never stipulated that he was familiar with the smell of the drugs or would have intended to distribute any marijuana in his possession.

But instead of looking at the case and the government's burden as a comprehensive whole, the majority chops it up piecemeal in a typical divide-and-conquer strategy. This case is all about "possession," it claims, not distributional intent. It does little good, however, for the majority to split the elements of this crime and pretend that Hall was tried on only one of them. The artificial segmentation that the majority attempts here misperceives not only the government's burden to prove each element of the offense beyond a reasonable doubt, but the practical realities of controlled substance cases which routinely devolve, as here, to disputed questions of mens rea, namely knowledge and intent. If the government had proven only that Hall had dominion and control over the back bedroom where the marijuana was found, as the majority would seem to require, Hall would be here on appeal arguing that the government failed to establish the other elements of the crime, notably culpable intent.

Third and finally, as I have noted, the majority disregards circuit precedent at every turn. In fact, we have already rejected the position the majority now takes. As previously explained, "A plausible interpretation of [Rule 404(b)] holds that evidence of other crimes

may not be offered when the defendant unequivocally denies committing the acts charged in the indictment. This circuit has no similar precept." *United States v. Hernandez*, 975 F.2d 1035, 1040 (4th Cir. 1992) (citation omitted). While the majority forages for quotations from other jurisdictions, the law in its immediate vicinity is clear.

## III.

By all measures of logic and precedent, this should have been a straightforward case unless, of course, past unlawful drug distribution is, as a matter of policy, but not of law, to be discounted. The district court made a routine discretionary call to admit highly relevant and probative evidence bearing directly on the elements of an alleged crime that the defendant had directly placed into dispute. I would uphold that ruling. While my fine colleagues in the majority opine at length about the errors of the trial court, the district judge ultimately made the sensible decision that is now the subject of our review. What is jarring here is the juxtaposition of the personal vantage point of an experienced district judge with the majority's remote and incorrect dissection of what went on before that judge's eyes.

The trial court concluded in the end that the evidence was relevant to knowledge and intent, and gave a limiting instruction to that effect. And viewed from the broader and most important perspective, the trial judge conducted a wholly fair trial. The defendant lost here because his ludicrous effort to pin responsibility for his crimes on his cousin utterly collapsed. But the district judge gave him every chance to shift the blame.

The dukes and earls of the appellate kingdom should learn to respect a trial court's job.